**William T. PERKS, Plaintiff,**

v.

**TOWN OF HUNTINGTON and Susan Scarpati–Reilly, as Councilwoman for the Town of Huntington and Individually Defendants.**

**No. 99–CV–4811 (JM).**

United States District Court, E.D. New York.

May 23, 2000.

Law Offices of Edward J. Yule, P.C., Northport, NY, by Edward J. Yule, for plaintiff William T. Perks.

Law Offices of Jason L. Abelove, Garden City, NY, by Jason L. Abelove, for defendant Susan Scarpati–Reilly.

Rains & Pogrebin, Mineola, NY, by Ernest R. Stolzer, for defendant Town of Huntington.

*Memorandum of Decision and Order*

MISHLER, District Judge.

Plaintiff William T. Perks ("Plaintiff") filed an Amended Complaint against Defendants Susan Scarpati–Reilly and the Town of Huntington alleging, *inter alia*, sexual harassment, defamation and violation of Plaintiff's civil rights. Defendant Scarpati–Reilly ("Defendant") moves to dismiss several causes of action. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## FACTUAL ALLEGATIONS[1]

In 1996, Plaintiff served as the Harbor Master/Oil Spill Response Manager for the Town of Huntington. During this time, Defendant served as the Town Board's liaison to the Town's Oil Spill Response Board. As liaison, Defendant supervised Plaintiff and made decisions affecting the terms and conditions of his employment. (Am.Compl. at ¶ 6.)

Around February 1997, Plaintiff and Defendant entered into an intimate personal relationship. "The Plaintiff attempted on numerous occasions to end this relationship, but was threatened each time by the defendant, Susan Scarpati–Reilly, with the loss of his job, other benefits of his employment and with criminal prosecution." Plaintiff terminated this relationship in August 1998. (Id. at ¶ 7.)

Shortly after terminating the relationship, Defendant engaged in a continuous course of conduct that created an abusive, intimidating and sexually hostile working environment. Examples of such conduct included:

- threatening to have the Town Attorney's office investigate the Plaintiff on unfounded allegations of wrongful conduct;
- following Plaintiff during and after business hours demanding that the relationship continue;
- calling Plaintiff to her office during business hours for lengthy meetings where she would pressure him to have sexual encounters in her office and resume their relationship by threatening him with adverse employment consequences if he refused;
- overseeing minute details of Plaintiff's work and making demands upon him that she did not make of other employees; and
- demanding Plaintiff use personal funds to pay for trips, lodging and meals shared by Plaintiff and Defendant, insisting that she was responsible for the increases in compensation he had received. (Id. at ¶ 8.)

On February 28, 1999, Plaintiff was working at the Mobil Oil Terminal Distribution Plant in Cold Spring Harbor, New York (the "Mobil Terminal") overseeing an oil transfer. Defendant had called him repeatedly that day demanding to see him, but Plaintiff had refused. At about 7:30 pm, Defendant arrived at the Mobil Terminal and confronted Plaintiff over his rela-

---

1. The factual allegations provided in this section are derived from the Complaint and are presumed to be true for purposes of this motion.

tionship with another woman. Defendant then threatened to report Plaintiff for not wearing a uniform, though Plaintiff was not required to wear a uniform. (Id. at ¶ 10.)

When Plaintiff tried to end the conversation by walking away, Defendant struck Plaintiff on the side of the head and grabbed him to pull him into her car. Plaintiff broke free from her grasp and ran away from Defendant. Defendant chased Plaintiff for a while, screaming that he had hit her, and then drove away. (Id. at ¶ 11.)

That night, Defendant called a friend of Plaintiff's and told the friend to inform Plaintiff that he should have his resignation on her desk the following day. Defendant also filed a complaint with the local police alleging that Plaintiff had struck her. At first, Defendant denied publicly that she had filed the complaint, but later admitted to it. The Town of Huntington hired an Independent Fact Finder, Gerald LaBush, to investigate the events on February 28, 1999 (the "Mobil Terminal Incident") and all other matters relating to the relationship between Plaintiff and Defendant. Plaintiff attached a copy of the Fact–Finder's Report (the "Report") to his Complaint as Exhibit 2. (Id.¶ 12.)

Plaintiff filed an Amended Complaint asserting twelve causes of action against Defendant and the Town of Huntington. The First cause of action asserts a claim for sexual harassment in violation of Title VII. The Second cause of action asserts a claim for sexual harassment in violation of N.Y. Exec.Law § 296, et seq. Count Three alleges a violation of the Equal Protection clause. Count Four alleges that Defendant defamed Plaintiff by filing a false police report. Count Five alleges the intentional infliction of emotional distress. Count Six alleges that the Town is vicariously liable for damages resulting from Defendant Scarpati–Reilly's actions. Count Seven asserts a violation of and liability under 42 U.S.C. § 1981a, Count Eight under § 1983, Count Nine under

§ 1985(3) and Count Ten under § 1988. Counts Eleven and Twelve assert claims of defamation premised on alleged statements that the Town and Scarpati–Reilly caused to be published in a local newspaper.

Defendant Scarpati–Reilly moves to dismiss Counts One, Two, Four, Five, Seven and Nine.

## DOCUMENTS CONSIDERED

On a motion to dismiss, district courts may consider the complaint and any attached documents that are incorporated by reference. Fed.R.Civ.P. 10(c); *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.,* 62 F.3d 69, 71–72 (2d Cir.1995) ("The complaint itself is deemed to include any document attached as an exhibit, and any document incorporated by reference."); *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (on a motion to dismiss, the court may consider the contents of any documents attached to the complaint or incorporated therein by reference, matters as to which judicial notice may be taken, and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied upon in bringing suit).

Review of and reliance on the Fact–Finder's Report is permissible because its attachment to the Amended Complaint afforded Defendant notice and an opportunity to respond, and therefore made it unnecessary to convert the motion into one for summary judgment. *See Cortec Inds., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

This rule does not allow the Court to adopt the facts as stated in the Report as true, but it does permit us to consider them as further allegations. In other words, in determining whether we can foresee any set of facts by which Plaintiff is entitled to relief on his claims, we may consider the allegations in the Report as

one set of facts that may be proven at trial.

By the same token, the Court may not consider Defendant Scarpati–Reilly's affidavit dated December 21, 1999, submitted in support of her motion to dismiss. *See Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662–63 (2d Cir.1996) (reversing grant of motion to dismiss where district court relied on allegations contained in movant's affirmation). The present motion is limited to the legal sufficiency of the claims in the Amended Complaint and although Defendant, an attorney, "feel[s] it imperative to stress to this Court" her position on the merits of Plaintiff's claims (Scarpati–Reilly Affidavit at ¶ 9), such insistence is inappropriate on a motion to dismiss, as Defendant should well know.

## STANDARD FOR MOTION TO DISMISS

In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999) (*quoting Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

### TITLE VII AND § 1981A

In his first cause of action, Plaintiff alleges that Defendant's conduct constituted unlawful sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

Defendant argues that no liability may attach to her for violation of Title VII because individuals may not be held liable under that statute. (Def.'s Mem. at 4 (*citing Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995).)) In his opposition to Defendant's motion, Plaintiff appears to concede that *Tomka* bars suits against individuals under Title VII in their individual capacity, but argues that *Tomka* does not address the potential liability of individuals in their official capacity. We find Plaintiff's argument unpersuasive.

■ *Tomka* clearly holds that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII". *Id.* at 1313. The mere fact that the court in *Tomka* did not delineate between liability in an individual's personal and official capacity does not call into question whether the holding is applicable in both circumstances. The court reasoned that liability may only be imposed on an employer with fifteen or more employees because Congress did not want to burden small entities with litigating discrimination claims. It was therefore "inconceivable" that Congress would have allowed individual employees to bear that burden. *Id.* at 1314. This rationale applies equally well to liability against individuals in their official capacities.

The wide majority of district courts that have addressed this question have reached a similar conclusion. *See, e.g., McBride v. Routh*, 51 F.Supp.2d 153, 157 (D.Conn. 1999) (collecting cases dismissing official capacity claims under Title VII); *Catalan v. Andrew Freedman Home*, No. 96 Civ. 7537, 1998 WL 19990, *1 (S.D.N.Y. Jan.21, 1998) (noting suits against individual supervisors inappropriate under Title VII where employer itself can be sued); *Gray v. Shearson Lehman Bros.*, 947 F.Supp. 132, 136 (S.D.N.Y.1996) (noting that "there is nothing to show that Congress intended

to permit suits against individuals in their official capacity"); *Bonner v. Guccione,* 916 F.Supp. 271, 279 (S.D.N.Y.1996) (noting that the *"Tomka* decision militates against the crafting of a private action against employees acting in their 'official' capacity").

Accordingly, Plaintiff's claims against Defendant for violation of Title VII are dismissed.

Plaintiff's Seventh cause of action seeks $1,000,000.00 in damages pursuant to 42 U.S.C. § 1981a. Section 1981a provides, in pertinent part, that

> [i]n an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5) [42 U.S.C.A. §§ 2000e-5 or 2000e-16] against a respondent who engaged in unlawful intentional discrimination ..., and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e-5(g) ], from the respondent. 42 U.S.C. § 1981a(a)(1).

■ Plaintiff claims that because we are dismissing Plaintiff's Title VII claim against Defendant, we must also dismiss Plaintiff's § 1981a claim, because § 1981a "simply sets forth potential damages which a prevailing plaintiff may pursue against a defendant". We agree. Plaintiff's Seventh cause of action against Defendant is dismissed.

## NEW YORK HUMAN RIGHTS LAW

In his Second cause of action, Plaintiff claims Defendant violated New York's Human Rights Law ("HRL"), N.Y. Exec.Law § 290 et seq. The HRL recognizes claims for liability brought against: (1) employers (N.Y. Exec.Law § 296.1) or (2) persons who aid, abet, incite, compel or coerce the commission of a violation by an employer. (N.Y. Exec.Law § 296.6).

Section 296.1 states, in pertinent part:

> It shall be unlawful discriminatory practice ... for an employer ... because of the ... sex of any individual to ... discriminate against such individual in compensation or in terms, conditions or privileges of employment.

The New York Court of Appeals has held that an employee may not be individually subject to suit as an employer under § 296.1 of the HRL "if he [or she] is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others". *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11 (1984). In the government context, it is unclear who, if anyone, would qualify as having an ownership interest. Thus, if any government employee is to be held liable under § 296.1, they must be found to do "more than carry out personnel decisions made by others".

Plaintiff alleges that Defendant made several decisions affecting the terms and conditions of Plaintiff's employment and ultimately terminated his employment. He further alleges that Defendant was a "municipal policymaker with final authority on the matters asserted herein". (Am. Compl. at ¶ 5.) While this final (yet crucial) allegation is somewhat vague insofar as it fails to specify on which "matters" Defendant allegedly had final authority, we presume for purposes of this motion that Plaintiff was referring to the many decisions Defendant is alleged to have made affecting Plaintiff's employment.

■ The supervisory relationship between Plaintiff and Defendant was certainly a unique one. It is not our duty, however, to determine at this stage whether in fact Defendant had the authority to terminate Plaintiff or make other decisions affecting his employment. It is enough that Plaintiff adequately alleges that she had such authority. *See Stordeur v. Computer*

*Assoc.*, 995 F.Supp. 94, 104 (E.D.N.Y.1998) (accepting allegation that individual defendant had authority to terminate plaintiff as true for purposes of motion to dismiss). Defendant may call upon us to revisit this issue after the submission of further evidence. For now, Plaintiff has sufficiently alleged that Defendant was an employer for purposes of HRL § 296.1.

Plaintiff also adequately alleges that Defendant may be held liable as an aider and abetter under HRL § 296.6. Section 296.6 states:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.

█ Many district courts in this circuit have cited *Tomka* for the proposition that under § 296.6, an individual may be held liable under the New York Human Rights Law if the defendant actually participated in the conduct giving rise to the claim of discrimination. *See, e.g., Arena v. Agip USA Inc.*, 95 Civ. 1529, 2000 WL 264312, at *3 (S.D.N.Y. Mar.8, 2000); *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F.Supp.2d 376, 380 (S.D.N.Y.1999); *Romero v. Howard Johnson Plaza Hotel*, No. 97 Civ. 3706, 1999 WL 777915, at *8 (S.D.N.Y. Sept.29, 1999); *Oliver v. General Nutrition Ctr.*, No. 97 Civ. 6800, 1999 WL 435208, at *3 n. 6 (S.D.N.Y. June 25, 1999); *Steadman v. Sinclair*, 223 A.D.2d 392, 636 N.Y.S.2d 325, 326 (1st Dep't 1996); *Peck v.*

*Sony Music Corp.*, 221 A.D.2d 157, 632 N.Y.S.2d 963, 963 (1st Dept.1995).

Several courts have questioned the reasoning behind the Second Circuit's expansive reading of § 296.6 in *Tomka.* As one court noted:

> Courts have identified two problems with this use of the aiding and abetting statute. First, the provision will become a limitless backstop capturing all persons who do not meet the definition of "employer" [under § 296.1], and thus would erase any distinction the legislature sought to draw by using the word employer. [citations omitted] Second, such an application creates a strange and confusing circularity where the person who has directly perpetrated the harassment only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator.

*Lippold v. Duggal Color Projects, Inc.*, No. 96–CV–5869, 1998 WL 13854, at *3 (S.D.N.Y. Jan.15, 1998) (discussing New York state court decisions that find no supervisory individual liability under § 296(6), yet ultimately finding liability in accordance with *Tomka* ).

We share these concerns but note that until the Second Circuit revisits the issue, *Tomka* is the law in this circuit and the "actual participation" rule governs in this action.[2]

---

**2.** Defendant argues that she should not be found liable as an aider and abetter because she could not have aided and abetted her own acts. (Def.'s Reply Mem. at 6); *see also, Hicks v. IBM*, 44 F.Supp.2d 593, 600 (S.D.N.Y.1999). The Second Circuit apparently disagrees. In *Tomka*, plaintiff "alleged that each of the individual defendants assaulted her and thereby created a hostile work environment". *Tomka*, 66 F.3d at 1317. The court held that that allegation was "sufficient to satisfy § 296(6) [HRL's aiding and abetting statute]". *Id.* Perhaps the rationale behind the court's decision was that each of the three individual defendants were aiding and abetting their fellow defendants' violations. If this is true, individuals may not be liable

under *Tomka* for aiding and abetting their own violations of the HRL. *Cf. Salvatore v. KLM Royal Dutch Airlines*, No. 98 Civ. 2450, 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) (denying motion to dismiss claim under § 296(6) where individual defendant was sole employee alleged to have engaged in discriminatory conduct). Perhaps the rationale behind the decision was that the employees' actions imposed liability on the employer and therefore the employees were aiding and abetting the employer's violation of the HRL, and not their own. We must wait for the Second Circuit to revisit the issue so that we may gain a firmer understanding of its rationale in *Tomka* and better understand the intended breadth of its application.

The Complaint is replete with allegations that Defendant actually participated in the conduct giving rise to the Complaint. Indeed, few other individuals are even named in the Complaint. Accordingly, Plaintiff has adequately alleged that Defendant may be held liable as an aider and abetter under § 296.6.

## DEFAMATION—POLICE REPORT

In his Fourth cause of action, Plaintiff asserts that Defendant defamed him by filing a false police report stating that Plaintiff struck her on February 28, 1999, when she knew that that statement was false. Defendant argues that Plaintiff's claim must be dismissed because Defendant was protected by a qualified privilege which Plaintiff cannot overcome.

"A good-faith communication upon any subject matter in which the speaker has an interest, or in reference to which he has a duty, is qualifiedly privileged if made to a person having a corresponding interest or duty." *Present v. Avon Prods., Inc.,* 253 A.D.2d 183, 187, 687 N.Y.S.2d 330 (1st Dept.1999). This privilege is applicable to statements made to the police about another's suspected crimes. *Id.* at 188, 687 N.Y.S.2d 330; *Toker v. Pollak,* 44 N.Y.2d 211, 220, 405 N.Y.S.2d 1, 5, 376 N.E.2d 163 (1978).

■ To overcome the privilege, the plaintiff must challenge the good-faith of the defendant by alleging that he or she acted with actual or common-law malice. Actual malice is shown where a speaker makes a defamatory statement while knowing the statement was false or having a "high degree of awareness of ... probable falsity". *Present,* 253 A.D.2d at 188, 687 N.Y.S.2d 330; *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 667, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). Common-law malice is demonstrated where the speaker was solely motivated by a desire to injure the plaintiff. *Present,* 253 A.D.2d at 189, 687 N.Y.S.2d 330 (citations omitted).

■ Here, Plaintiff's claims for defamation survive Defendant's motion to dismiss on both grounds. It is not the duty of the Court at this stage to determine what happened on February 28, 1999 at the Mobil Terminal. Each party claims the other struck them and there appear to be no non-party witnesses to the incident. On the present motion, however, we need only determine whether Plaintiff has alleged a set of facts whereby a jury could find that Defendant filed the police report with malice. In determining whether Plaintiff has met this burden, as discussed above, we may consider the Fact–Finder's Report appended to the Complaint as further allegations of Defendant's conduct. In addition, because we construe the allegations in the light most favorable to the non-movant, we focus on the Plaintiff's version of what occurred at the Mobil Terminal as contained in the Fact–Finder's Report. Based on this review, we believe Plaintiff has met his burden.

Plaintiff alleges that Defendant would continuously harass him following his termination of their intimate relationship. On February 28, 1999, while baking a cake for her son's birthday, Defendant allegedly drove over thirty minutes to the Mobil Terminal to talk with Plaintiff about an unimportant matter. Upon arrival, the two allegedly engaged in a heated conversation in which Defendant allegedly claimed that Plaintiff was making time to see his girlfriend but not her. When Plaintiff told Defendant that he did not have time to discuss the matter with her, Defendant allegedly began to get confrontational and upset that Plaintiff was not going to see her. (Fact–Finder Report at 15.) As Plaintiff told Defendant he was leaving, Defendant allegedly struck Plaintiff on the left side of his head. Defendant then allegedly grabbed Plaintiff's sleeve and demanded that he get in her car with her. In refusing to get in the car, Plaintiff allegedly broke Defendant's hold by taking her arm off of his sleeve. As soon as Plaintiff did so, Defendant allegedly began

screaming "You hit me. You hit me." (Id. at 16.) Defendant then allegedly phoned Plaintiff's girlfriend and told her that Plaintiff was to have his resignation on her desk the following morning, not for slapping Defendant, but for having failed to wear a uniform while overseeing the oil transfer. (Id. at 17.) Following the phone call, Defendant drove to the Second Precinct to file a complaint that she had been slapped.

When reporters confronted Defendant to confirm that Plaintiff had slapped her, Defendant allegedly denied that she had even filed the report. (Am.Compl. at ¶ 12.) Defendant allegedly called Plaintiff and told him, "Listen Billy, I'll do what you say, to resolve this. I told them [the reporters] it's a conspiracy ... that it was somebody else, it wasn't me." (Fact–Finder Report at 25).

We again state that it is not our charge on this motion to determine if any of the above allegations are true. We believe, however, that Plaintiff has adequately alleged that Defendant filed the police report knowing that the statements contained therein were false and that she did so solely with a desire to injure Plaintiff. Accordingly, Defendant's motion to dismiss Plaintiff's Fourth cause of action for defamation is denied.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's Fifth cause of action alleges that Defendant's conduct outlined in the Amended Complaint constituted intentional infliction of emotional distress.

A cause of action for intentional infliction of emotional distress under New York law has four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999). Moreover, there can be no liability unless " 'the con-

duct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' " *Id.* (*quoting Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)).

Defendant claims Plaintiff's allegations constitute a "garden variety sexual harassment case" and that they do not rise to the level of extreme and outrageous conduct. Plaintiff, however, notes that the Complaint alleges

"conduct of a harassing nature, that occurred both at work and after hours and that went on over a six month period, thus setting out a continuous campaign by Scarpati–Reilly against the Plaintiff.... [T]he plaintiff's claim details a multitude of extreme and outrageous acts undertaken by Scarpati–Reilly and directed at the Plaintiff that had no other purpose but to intimidate the plaintiff and cause him distress if he did not resume his relationship with Scarpati–Reilly." (Pl.'s Mem. at 13.)

Plaintiff also points out that a claim for intentional infliction of emotional distress is most likely to succeed where there is an allegation of physical assault or battery as is alleged here. (*Id.* at 13–14) (*citing Gerzog v. London Fog Corp.*, 907 F.Supp. 590, 604 (E.D.N.Y.1995).)

While it is true that sexual harassment can, if sufficiently outrageous and extreme, give rise to a claim for intentional infliction of emotional distress, *see Funk v. F & K Supply*, 43 F.Supp.2d 205, 219–20 (N.D.N.Y.1999), we do not believe Plaintiff has met his burden here.

Plaintiff essentially alleges that after an extensive consensual intimate relationship, he wanted to end the relationship and she did not. In her efforts to keep the relationship going, Plaintiff alleges that Defendant, *inter alia*, harassed him at work, paid close attention to his whereabouts

throughout the day, threatened him with adverse employment actions and made unjustified demands of him. Plaintiff also alleges that Defendant struck him in the head.

Plaintiff is correct that in the "rare instances" where New York courts have recognized a claim for intentional infliction of emotional distress in the employment context, the claims have alleged not merely sexual harassment, but "more significantly, battery". *Gerzog,* 907 F.Supp. at 604. Such battery, however, is most often sexual in nature, and not merely a "garden variety" assault as is alleged here. *See Sowemimo v. D.A.O.R. Security, Inc.,* 43 F.Supp.2d 477, 491 (S.D.N.Y.1999) ("Courts have observed that a plaintiff must allege sexual battery in order to survive ... summary judgment in the sexual harassment context").

For example, in *Jaffe v. National League for Nursing,* 222 A.D.2d 233, 635 N.Y.S.2d 9 (1st Dept.1995), the court held that the plaintiff's allegations, which included " 'a hard slap on [plaintiff's] backside,' during an outburst of rage," "f[ell] short of the rigorous standard of outrageous conduct necessary to maintain a cause of action for intentional infliction of emotional distress". *Id.* at 10. While an assault clearly took place, nothing in the court's opinion suggests that it was sexually-motivated. Likewise, in *Ponticelli v. Zurich American Insurance Group,* 16 F.Supp.2d 414, 441 (S.D.N.Y.1998), the court held that plaintiff's allegations did not rise to the level of extreme and outrageous conduct where the only incident of touching alleged—being pushed into a filing cabinet—was not a sexual assault.

Without condoning the actions alleged in the Amended Complaint, they do not rise to the level of extreme and outrageous conduct required by New York law. Accordingly, Plaintiff's claim for intentional infliction of emotional distress is dismissed.

**42 U.S.C. § 1985**

Defendant argues that the proposed Amended Complaint fails to state a claim under 42 U.S.C. § 1985(3) because, *inter alia,* Plaintiff fails to allege any conspiracy, much less one with particularity as is required by the Second Circuit.

Section 1985 provides, in pertinent part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages ... against any one or more of the conspirators.

42 U.S.C. § 1985(3).

The Second Circuit has repeatedly held that a plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts in which defendants engaged which were reasonably related to the promotion of the claimed conspiracy. *Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir.1999) (granting summary judgment where allegations of conspiracy were conclusory and vague). More specifically, "A legally sufficient § 1985(3) complaint must aver a conspiracy between two or more persons intended to deprive any person or class or persons of the equal protection of the laws or of equal privileges and immunities under the law and an act by one of the conspirators in furtherance of the conspiracy which injured another person...." *Girard v. 94th Street and Fifth Ave. Corp.,* 530 F.2d 66, 70 (2d Cir.), cert. denied, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976). Defendant claims that the Amended Complaint

fails to allege a second individual with whom Defendant allegedly conspired.

Though Defendant is correct that no individual aside from Defendant is named in the Complaint, two other individuals are named in the Fact–Finder's Report[3]— Robert DeGregorio and Town Attorney James Matthews. Plaintiff, however, has failed adequately to allege that either were co-conspirators of Defendant.

According to the Fact–Finder's Report, DeGregorio was a Special Assistant Town Attorney and a friend of both Plaintiff and Defendant. After the Mobil Terminal incident, DeGregorio received phone messages from both parties. Both parties confided their sides of the story to DeGregorio, who is characterized in the Report as somewhat of a mediator. Plaintiff allegedly told DeGregorio that the way to resolve the differences between Plaintiff and Defendant was for Plaintiff to go back to his prior position at Harbors and Waterways. DeGregorio then asked Defendant if she would agree to that solution and Defendant agreed.

The next day, however, Plaintiff changed his mind and told DeGregorio he wanted to remain at his job. DeGregorio relayed that message to Defendant. According to the Report, "DeGregorio and Scarpati–Reilly had a long meeting later that night and discussed whether to leave Perks in his job or not, balancing his ability and his 'abusive conduct'. They also discussed DeGregorio's belief that Perks was trying to allege sexual harassment." (Fact–Finder Report at 23).

The next morning, when Plaintiff heard from newspaper reporters that Defendant had filed a complaint with the police, Plaintiff went to see DeGregorio. According to the Report, "Perks went up to a table in the foyer, and took a bottle of 'Emmets' (Irish whisky), and opened it up, and came into the kitchen and poured himself a drink. He then spent the next two hours

pacing back and forth like a wild animal . . ." (Fact–Finder Report at 24).

After denying that she had filed the complaint, Defendant still tried to pursue criminal charges against Plaintiff. DeGregorio told Defendant that he wanted to go with her to the District Attorney's office because he was "concerned" about Plaintiff. DeGregorio and Defendant consulted with Town Attorney James Matthews who declined to become involved with the dispute and referred it to the Town Board.

▆ Based on these allegations, Plaintiff has not adequately alleged that DeGregorio or Matthews intended to deprive Plaintiff of the equal protection of the laws or of equal privileges and immunities under the law. Even by Plaintiff's own allegations, DeGregorio assisted Plaintiff by acting as a liaison between him and Defendant. Plaintiff also turned to DeGregorio when he needed someone to help him calm his angst over his worrisome predicament. While DeGregorio did discuss the matter with Defendant and offer to accompany her to the District Attorney as she pursued criminal charges against Plaintiff, there is no support for the allegation that he did so with the intent to further Defendant's allegedly illegal motives. Based on Plaintiff's allegations as derived from the Report, he merely acted as a voice of reason amidst an otherwise chaotic series of events. Plaintiff fails adequately to allege that DeGregorio was Defendant's co-conspirator.

Likewise, there is no support for the allegation that Defendant conspired with Town Attorney James Matthews. As noted above, Matthews took no action on this matter, but rather referred the matter to the Town Board. We see no basis for Plaintiff's allegation that Matthews conspired with Defendant to deprive Plaintiff of his civil rights.

---

3. As discussed above, we will consider the statements in the Fact–Finder's Report as allegations incorporated into the Complaint and consider them in a light most favorable to Plaintiff for purposes of this motion.

We have considered Plaintiff's remaining arguments on this issue and find them to be without merit.

Because Plaintiff fails to allege that Defendant conspired with another individual to deprive him of his civil rights, Plaintiff's claim against Defendant under § 1985(3) must fail.

### EEOC LETTER

In Point VI of Defendant's motion, Defendant argues an alternative basis for dismissal of Plaintiff's claims under Title VII. Defendant argues that the "right to sue" letter Plaintiff received from the Equal Opportunity Employment Commission (EEOC) was issued to him within 180 days of the filing of his EEOC charge. Defendant claims we should dismiss the instant action because it is in violation of 42 U.S.C. § 2000e–5(f)(1) which some courts have interpreted to prohibit private actions until the expiration of 180 days from the filing of the charge. *See Martini v. Federal Nat'l Mortgage Ass'n.*, 178 F.3d 1336 (D.C.Cir.1999).

Because we dismiss Plaintiff's Title VII claims on other grounds (see TITLE VII above), we need not address this claim.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's First, Fifth, Seventh and Ninth causes of action is GRANTED, and Defendant's motion to dismiss Plaintiff's Second and Fourth causes of action is DENIED.

As the claims we dismiss today are distinct from the claims remaining in this action, we find no just reason for delay in entering judgment in favor of Defendant Scarpati–Reilly on the dismissed claims. *See* Federal Rule of Civil Procedure 54(b); *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir.1992) (for Rule 54(b) to be applicable, (1) multiple claims or multiple parties must be present, and (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291). The Clerk is directed to enter judgment in favor of Defendant Scarpati–Reilly and against Plaintiff dismissing the First, Fifth, Seventh and Ninth causes of action.

SO ORDERED.