Carolyn TULLY–BOONE, Plaintiff,

v.

NORTH SHORE–LONG ISLAND JEWISH HOSPITAL SYSTEM, Glen Cove Hospital, Barbara Backus, Carolyn Mueller and Gloria Cohen, Defendants.

No. 08–CV–2497 (ADS)(WDW).

United States District Court,
E.D. New York.

Dec. 6, 2008.

Leeds Morelli & Brown, by Rick Ostrove, Esq., Matthew Scott Porges, Esq., of Counsel, Carle Place, NY, for Plaintiff.

Venable LLP, by Shaffin Abdul Datoo, Esq., of Counsel, New York, NY, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On June 23, 2008, Carolyn Tully–Boone ("the Plaintiff") commenced this lawsuit against North Shore–Long Island Jewish Hospital System ("North Shore"), Glen Cove Hospital ("the Hospital"), Barbara Backus, Carolyn Mueller, and Gloria Cohen (collectively "the Defendants"), asserting claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., the Health Insurance Portability Act ("HIPAA"), the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and New York Executive Law § 290, et seq. ("New York Human Rights Law" or "NYHRL"). Presently before the Court is the Defendants' FED.R.CIV.P. 12(b)(6) motion to dismiss the Plaintiff's complaint.

### I. BACKGROUND

The Plaintiff, a registered nurse, was employed by North Shore in various staff and management nursing positions from 1981 until December of 2006. On or about September 11, 2006, the Plaintiff was transferred to the Hospital to work as a Quality Management Coordinator. At that time, the Plaintiff was advised that she would be subject to a six-month probationary period and a three-week orientation.

Shortly after her transfer, the Plaintiff experienced several personal problems that affected her physical and mental health. After being diagnosed as having anxiety and depression, the Plaintiff began to take medication that left her lethargic and drowsy. The Plaintiff also alleges that she had difficulty sleeping and this affected her ability to arrive at work on time at 8:00 a.m.

In September of 2006, the Plaintiff alleges that she advised Backus, the Assistant Director of Quality Management, and Cohen, North Shore's Director of Human Resources, about her personal issues. On or about October 23, 2006, the Plaintiff avers that she told Mueller, the Director of Quality Management, and Backus that she needed time off because her condition was deteriorating and preventing her from completing work tasks. In the weeks that followed, the Plaintiff alleges that Mueller and Backus made a number of inquiries into the Plaintiff's medical conditions and the medications she was using.

On or about November 9, 2006, Backus had a discussion with the Plaintiff about her punctuality. The Plaintiff explained that complications from her medication made it difficult for her to arrive at work on time at 8:00 a.m. Backus agreed to push the Plaintiff's start time back to 8:30. The Plaintiff told Backus that she would like to extend her start time even further in light of her condition and that she was willing to stay later to ensure that her tasks were completed. On or about November 24, 2006, the Plaintiff received a memorandum from Backus regarding the fact that she had arrived fifteen minutes late for work on that day.

On or about November 29, 2006, the Plaintiff alleges that she initiated a meeting with Backus and Mueller at which time she requested medical leave as an ac-

commodation for her disability. The Plaintiff further alleges that Mueller informed her that she would discuss the matter with Cohen to determine whether the Plaintiff was in fact eligible for medical leave. On or about November 30, 2006, the Plaintiff received a disciplinary warning notice that noted she was ten minutes late to work on that day. The Plaintiff was summoned to meet with Backus and John Sendak, the Administrator of the Hospital. In this meeting, the Plaintiff alleges that the parties discussed her disability and she reiterated her request that the Hospital accommodate her by permitting her to "occasionally arrive late to work."

At the conclusion of the November 30th meeting, the Plaintiff was informed that, as a disciplinary action, she would be suspended without pay for one day. The Plaintiff alleges that she refused to sign the disciplinary warning until she was allowed to insert handwritten comments indicating that, among other things, she was still waiting for Mueller to respond to her request for medical leave. On or about December 4, 2006, the Plaintiff received an employment review from Backus. According to the Plaintiff, this review "included positive feedback as well as certain alleged deficiencies."

During the week of December 4, 2006, the Plaintiff alleges that she initiated a meeting with Cohen to complain that North Shore had violated the FMLA by failing to "carry over" benefits she had accrued over the course of her tenure as a North Shore employee. During the meeting, the Plaintiff also inquired about her request for medical leave. However, Cohen indicated that she was unaware of any such request. On or about December 18, 2006, the Plaintiff met with Cohen again to discuss her benefits and the suspension. The Plaintiff alleges that when she told

Cohen that her lateness was caused by her medical condition, Cohen "became hostile and abruptly ended the meeting."

On December 20, 2006, the Plaintiff was terminated from her position as Quality Management Coordinator. Mueller and Backus presented the Plaintiff with a review prepared by Backus and was informed that she did not "pass" her orientation period. According to the Plaintiff, the review "extensively detailed nine performance areas with alleged deficiencies."

On or about January 24, 2007, the Plaintiff discussed her termination with Rosemary Milano in Corporate Human Resources. The Plaintiff alleges that Milano was never informed about the Plaintiff's request for medical leave. On or about January 31, 2007, the Plaintiff spoke with Milano a second time. The Plaintiff alleges that, in this conversation, Milano told her that Mueller, Backus, and Cohen claimed that the Plaintiff had never requested a medical leave.

On June 23, 2008, the Plaintiff commenced this lawsuit alleging that: (i) she was discriminated against because of her disability in violation of the ADA and NYHRL; (ii) she was retaliated against because she requested reasonable accommodations for her disability; (iii) her request for reasonable accommodations were denied in violation of the ADA and NYHRL; (iv) the Defendants interfered with her rights under the FMLA; and (v) Backus, Mueller, and Cohen ("the Individual Defendants") violated NYHRL by aiding and abetting the unlawful discrimination. The complaint also asserted a cause of action under HIPAA, but this claim has since been withdrawn by the Plaintiff. On August 25, 2008, the Defendants filed the instant motion to dismiss part of the Plaintiff's complaint.

## II. DISCUSSION

### A. 12(b)(6) Standard

In considering a 12(b)(6) motion to dismiss, "the Court must accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.,* 412 F.3d 103, 109 (2d Cir. 2005). A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has interpreted *Twombly* to require that a complaint "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,* 507 F.3d 117, 121 (2d Cir.2007).

The Supreme Court has held that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (internal citation omitted). In order to survive a motion to dismiss, a Plaintiff's complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (citing Fed.R.Civ.P. 8(a)(2)). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (internal citation and quotation marks omitted).

### B. The Defendants' Motion to Dismiss

The Defendants argue that the complaint must be dismissed in part because: (i) they did not interfere with the Plaintiff's rights under the FMLA; (ii) the accommodations requested by the Plaintiff were unreasonable as a matter of law; (iii) the Plaintiff has failed to offer allegations that show Mueller and Cohen actually aided and abetted violations of NYHRL; and (iv) Backus could not have aided and abetted her own allegedly discriminatory acts.

#### 1. The Plaintiff's FMLA Claim

■ "The FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Sista v. CDC Ixis North America, Inc.,* 445 F.3d 161, 174 (2d Cir.2006) (citing 29 U.S.C. § 2612(a)(1)(D)). "The FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer ...' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Id.* (citing *Nevada Dept. of Human Resources v. Hibbs,* 538 U.S. 721, 724–25, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003)); 29 U.S.C. § 2615(a)(1).

■ As a threshold matter, the Court notes that, at this stage, the Plaintiff has offered allegations sufficient to show that she is entitled to FMLA leave. Courts have recognized that depression is a serious health condition within the meaning of the FMLA and the Plaintiff has made an adequate showing that she was unable to perform her job function because of her condition. *Spangler v. Federal Home Loan Bank of Des Moines,* 278 F.3d 847, 852 (8th Cir.2002) (recognizing that depression is a "serious health condition" within the meaning of the FMLA); *Collins*

v. NTN–Bower Corp., 272 F.3d 1006 (7th Cir.2001) (same); Tambash v. St. Bonaventure Univ., 2004 WL 2191566, at *8 (W.D.N.Y. Sep. 24, 2004) (same). The Court's analysis must turn, then, to whether the Defendants interfered with the Plaintiff's attempts to exercise her rights under the statute.

■ The Plaintiff alleges that the Defendants interfered with her rights under the FMLA in several different ways. First, the Plaintiff contends that the Defendants failed to inform her about her rights under the statute once she made a request for medical leave. The Defendants counter that the Plaintiff's claim is foreclosed by the Second Circuit's decision in Sarno v. Douglas Elliman–Gibbons & Ives, Inc., 183 F.3d 155 (2d Cir.1999). The Court disagrees.

In Sarno, the Second Circuit found that the FMLA does not give an employee "a right to sue [an] employer for failing to give notice of the terms of the Act where the lack of notice had no effect on the employee's exercise of . . . any substantive right conferred by the Act." Id. at 162 (emphasis added). Here, the Defendants' failure to provide notice about the options available to the Plaintiff may well have affected her opportunity to exercise substantive rights under the statute. The Defendants could have, for example, apprised the Plaintiff of her entitlement to 12 weeks of leave or her right to intermittent leave under § 2612(b)(1). Accordingly, the Plaintiff can assert a plausible claim that, in failing to inform her about her FMLA rights, the Defendants interfered with those rights.

■ The Plaintiff also alleges that the Defendants interfered with her rights under the FMLA by failing to respond to her request for medical leave. Federal regulations require employers to respond to leave requests under the statute within two business days. 29 C.F.R § 825.208(a),(c). Here, the Plaintiff alleges she made her first request for medical leave on or about November 29, 2006. The Defendants never responded to this request or the Plaintiff's subsequent request to Cohen and the Plaintiff was terminated on or about December 20, 2006. The Defendants appear to argue that because the Plaintiff was fired before they could respond to her requests, they could not have interfered with her rights under the FMLA.

The Defendants rest their argument entirely upon Ferguson v. Lander Co., Inc., 2008 WL 921032, at *19 (N.D.N.Y. Apr. 2, 2008). In that case, the plaintiff was terminated five weeks after submitting a leave request without ever receiving notification from his employer about the disposition of his request. The Court found that "[w]hile a technical violation of the FMLA has been established," the plaintiff had no private cause of action for a violation of the regulation. In particular, the Court appears to have found that where the plaintiff was discharged before his request was considered, the employer's failure to approve the request did not interfere with his rights under the statute.

The Court respectfully disagrees with the reasoning in Ferguson. The Court declines to find, as a matter of law, that an employer may evade liability for interfering with an employee's FMLA rights simply because that employee is terminated before her employer can respond to her request for medical leave. Here, during the period from the Plaintiff's initial request for medical leave until her termination, the Plaintiff did not take the leave to which she may have been entitled because the Defendants failed to respond to her request. In this sense, the Defendants did not merely commit a "technical violation" of the regulations construing

§ 2615; their failure to respond to her request may well have interfered with her statutory entitlement to take medical leave.

■ To the extent that the complaint attempts to set forth an alleged violation of the FMLA for the Defendants' failure to "carry over [the Plaintiff's] benefits," it is clear that this claim must be dismissed because an employer's failure to "carry over benefits," does not constitute interference with an employee's rights under the FMLA.

### 2. The Plaintiff's Reasonable Accommodation Claims

■ Both the ADA, 42 U.S.C. § 12112(b)(5)(A), and NYHRL, N.Y. Exec. Law § 296(3)(a), make it unlawful for an employer to refuse to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified" employee. *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (citing 42 U.S.C. § 12112(b)(5)(A)); *see Burton v. Metropolitan Transp. Auth.*, 244 F.Supp.2d 252, 258 (S.D.N.Y.2003) (noting that reasonable accommodation claims under the ADA and NYHRL are analyzed under essentially the same standard). The Plaintiff alleges that the Defendants failed to make reasonable accommodations for her disability when they did not address her request for medical leave or consult with her to create a more flexible start time. The Defendants counter that the Plaintiff's requests were unreasonable "as a matter of law." In particular, the Defendants contend that the Plaintiff requested an unreasonable indefinite leave and that her second request for a later start time, made after Backus had already pushed her start time back thirty minutes, was in actuality a request to "arrive for work at whatever time she wanted."

In the instant case, on a motion to dismiss, it would not be appropriate for the Court to decide whether the Plaintiff's requests for accommodation were reasonable. The Second Circuit has recognized that in the context of a motion to dismiss "[w]hile there may be claims requesting [accommodation] under the ADA that warrant dismissal as unreasonable as a matter of law," many cases require "a fact-specific inquiry," and are therefore not properly disposed of at the pleading stage. *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir.1995).

Here, the Plaintiff has alleged that she sought leave as an accommodation for her anxiety and depression and sought a later start time because the medication she was taking for her condition made it difficult for her to arrive at work on time at 8:30 a.m. The Plaintiff further alleges that she informed Backus that, if the Defendants would push back her start time, she was willing to stay later to complete her work. At this early stage, the Court is unwilling to find that such requests for accommodation were unreasonable as a matter of law. Accordingly, the Defendants' motion to dismiss the Plaintiff's reasonable accommodation claims under the ADA and NYHRL is denied.

### 3. The Plaintiff's Aiding and Abetting Claims under NYHRL § 296(6)

NYHRL provides that "it shall be an unlawful discriminatory practice 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'" *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir.2004) (citing N.Y. Exec. Law § 296(6)). In *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995), the Second Circuit held that an employee who "actually participates in the conduct giving

rise to a discrimination claim," may be held liable under § 296(6). The Plaintiff contends that the Individual Defendants aided and abetted the unlawful discrimination allegedly committed by North Shore and the Hospital. The Defendants counter that: (i) the Plaintiff has failed to adequately allege that Mueller and Cohen "actually participated" in the unlawful conduct; and (ii) the claim against Backus should be dismissed because "as the alleged primary actor, Backus cannot aid and abet her own actions as a matter of law." For the sake of clarity, the Court will analyze the Plaintiff's § 296(6) claims as to each Individual Defendant separately.

### a. As to Carolyn Mueller

The Plaintiff alleges that Mueller asked the Plaintiff, on several occasions, about her medical conditions and the medication she was taking; Mueller refused to consult a doctor's note offered by the Plaintiff; Mueller never discussed the Plaintiff's leave request with Cohen as she promised to do; Mueller presented her with a negative employment review on the day she was fired; and Milano informed her that, after the Plaintiff's termination, Mueller claimed that the Plaintiff never requested medical leave. Viewing these allegations, as the Court must, in the light most favorable to the Plaintiff, she could establish that Mueller participated in unlawful, discriminatory acts. Accordingly, the Plaintiff has sustained her burden to state a plausible § 296(6) claim against Mueller.

### b. As to Gloria Cohen

The Plaintiff alleges that on or about December 4, 2006, she inquired of Cohen about the status of her leave request and Cohen informed her that she was unaware of any such request; when she told Cohen in a meeting that her lateness was caused by her medication, Cohen "became hostile and abruptly ended the meeting"; in January of 2007 after she was terminated, Milano told her that Cohen denied any knowledge of the Plaintiff's request for medical leave. The allegations that describe Cohen's actual participation in unlawful acts are not as viable as those offered against Mueller. Nevertheless, if these allegations are true, the Plaintiff could establish that Cohen participated in acts that contributed to the Defendants' alleged failure to accommodate her disability. Accordingly, the Court finds that, at this stage, the Plaintiff has alleged a plausible aiding and abetting claim against Cohen.

### c. As to Barbara Backus

In order to discuss the Defendants' argument in favor of dismissing the Plaintiff's aiding and abetting claim against Backus, a more thorough review of NYHRL is in order. NYHRL § 296(1)(a) makes it an unlawful discriminatory practice "[f]or an employer ... because of the ... disability ... of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." The New York Court of Appeals has found that an employee may not be held individually liable under the statute "if he [or she] is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 473 N.E.2d 11, 12, 483 N.Y.S.2d 659, 660 (1984).

The Plaintiff alleges that North Shore and the Hospital, acting through the Individual Defendants, violated NYHRL 296(1)(a). As discussed above, the Plain-

tiff further alleges that the Individual Defendants violated § 296(6) by aiding and abetting the alleged unlawful discrimination by North Shore and the Hospital. Backus counters that, as the "primary actor" committing the allegedly unlawful acts, she cannot be liable under § 296(6) because she cannot aid and abet her own actions. *See Chamblee v. Harris & Harris, Inc.,* 154 F.Supp.2d 670, 677 (S.D.N.Y. 2001) (McMahon, J.) (finding that under § 296(6) "primary actor cannot be an aider and abettor of his own actions"); *Hicks v. IBM,* 44 F.Supp.2d 593, 600 (S.D.N.Y. 1999) (McMahon, J.) (same). There is, of course, some logical appeal to this argument.

Indeed, certain Courts have cast doubt on the Second Circuit's interpretation of § 296(6) in *Tomka.* 66 F.3d at 1317. As one Court noted, the *Tomka* formulation of the statute "creates a strange and confusing circularity where the person who has directly perpetrated the [unlawful discrimination] only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator." *Lippold v. Duggal Color Projects, Inc.,* 1998 WL 13854, at *3 (S.D.N.Y. Jan. 15, 1998). Confronted with an argument identical to the one made by Backus here, the late Judge Jacob Mishler offered a useful analysis of the logical problem presented by the Second Circuit's interpretation of § 296(6):

> Defendant argues that she should not be found liable as an aider and abetter because she could not have aided and abetted her own acts. *see also, Hicks v. IBM,* 44 F.Supp.2d 593, 600 (S.D.N.Y. 1999). The Second Circuit apparently disagrees. In *Tomka,* plaintiff "alleged that each of the individual defendants assaulted her and thereby created a hostile work environment". *Tomka,* 66 F.3d at 1317. The court held that that allegation was "sufficient to satisfy § 296(6) [HRL's aiding and abetting statute]". *Id.* Perhaps the rationale behind the court's decision was that each of the three individual defendants were aiding and abetting their fellow defendants' violations. If this is true, individuals may not be liable under *Tomka* for aiding and abetting their own violations of the HRL. Perhaps the rationale behind the decision was that the employees' actions imposed liability on the employer and therefore the employees were aiding and abetting the employer's violation of the HRL, and not their own. We must wait for the Second Circuit to revisit the issue so that we may gain a firmer understanding of its rationale in *Tomka* and better understand the intended breadth of its application.

*Perks v. Town of Huntington,* 96 F.Supp.2d 222, 228 (E.D.N.Y.2000) (internal citations omitted).

The Court is mindful that the *Tomka* interpretation of § 296(6) is not without controversy. Nevertheless, "until the Second Circuit revisits the issue, *Tomka* is the law in this circuit." *Perks,* 96 F.Supp.2d at 228. Accordingly, Backus may be held liable for aiding and abetting allegedly unlawful discrimination by her employer even where her actions serve as the predicate for the employer's vicarious liability. *See Prince v. Madison Square Garden,* 427 F.Supp.2d 372, 385 (S.D.N.Y.2006); *Bennett v. Progressive Corp.,* 225 F.Supp.2d 190, 214 (N.D.N.Y.2002); *Perks,* 96 F.Supp.2d at 228; *Lippold,* 1998 WL 13854, at *3. The Plaintiff's complaint is replete with allegations that Backus "actually participated" in the alleged unlawful conduct, and therefore, the Plaintiff has adequately pled that she may be held liable as an aider and abetter under § 296(6).

### III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the Plaintiff's HIPAA claim is dismissed with prejudice, and it is further

ORDERED, that the Defendants' motion to dismiss the Plaintiff's FMLA causes of action is **GRANTED** as to the claim for their failure to "carry over benefits" and **DENIED** as to the claims for the Defendants' alleged failure to notify the Plaintiff of her rights under the statute and their alleged failure to respond to her request for leave.

ORDERED, that the Defendants' motion to dismiss the Plaintiff's reasonable accommodation claims under the ADA and NYHRL is **DENIED,** and it is further

ORDERED, that the Defendants' motion to dismiss the Plaintiff's § 296(6) claims against the Individual Defendants is **DENIED,** and it is further

ORDERED, that the parties are directed to report to United States Magistrate Judge William D. Wall to set a discovery schedule.

**SO ORDERED.**