Mary TYSZKA, Plaintiff

v.

EDWARD MCMAHON AGENCY,
et al, Defendants

No. 3:00–CV–0298(EBB).

United States District Court,
D. Connecticut.

Sept. 24, 2001.

Eugene N. Axelrod, Employment Law Group, Woodbridge, CT, US Court of Appeals, Office of the Clerk, New York City, for Plaintiff.

Edward W. Gasser, Law Office of Edward W. Gasser, LLC, Avon, CT, Deborah S. Freeman, Ann M. Siczewicz, Nicole J. Anker, Tanya Tymchenko, Bingham Dana, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ELLEN B. BURNS, Senior District Judge.

### INTRODUCTION

Plaintiff Mary Tyszka ("Plaintiff" or "Tyszka"), brought this eight-count Complaint against Edward McMahon ("McMahon"), her former employer at the Edward McMahon Insurance Agency, Nationwide Mutual Insurance Company ("Nationwide") and Steven Miles ("Miles"), Nationwides's sales growth manager. Against Nationwide and Miles, she alleges violations of Title VII, the Connecticut Fair Employment Practices Act, and the state law torts of intentional and negligent inflic-

tion of emotional distress. Nationwide and Miles now move for summary judgment on each Count of the Complaint addressed to them. Edward McMahon and the McMahon Agency are no longer parties to this litigation.

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion.

■ Local Rule 9(c)(1) imposes on the moving party the requirement of annexing to the motion for summary judgment a "separate, short and concise statement of material facts which are not in dispute." Local Rule 9(c)(2) places a parallel burden upon the resisting party to include a "separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 9(c)(1) provides that the facts set forth by the moving party in accordance with that Rule shall be deemed admitted unless controverted by the opposing party in accordance with Rule 9(c)(2). Local Rule 9(c)(3) makes clear that these requirements are in addition to those of Fed.R.Civ.P. 56.

■ The purpose of a Rule 9(c)(2) Statement is to make affirmative statements which will aid and inform the Court. Quite naturally, the complete absence of a Rule 9(c)(2) Statement fails to serve this purpose. This alone would be grounds for a grant of summary judgment. *See Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984)(no filing in compliance with local rule; grant of summary judgment); *Wyler v. United States*, 725 F.2d 156, 158 (2d Cir.1983)(affirming grant of summary judgment); *N.S. v. Stratford Bd. Of Educ.*, 97 F.Supp.2d 224 (D.Conn.2000)(granting summary judgment); *Booze v. Shawmut Bank, Connecticut*, 62 F.Supp.2d 593

(D.Conn.1999)(granting summary judgment); *Trzaskos v. St. Jacques*, 39 F.Supp.2d 177 (D.Conn.1999)(granting summary judgment); *Kusnitz v. Yale University School of Medicine*, 3:96–CV–02434 (EBB), 1998 WL 422903 (July 16, 1998)(granting summary judgment); *Corn v. Protective Life Ins. Co.*, 1998 WL 51783 (D.Conn. Feb. 4, 1998)(granting summary judgment); *Peterson v. Saraceni*, 1997 WL 409527 (D.Conn. July 16, 1997)(granting summary judgment); *Scianna v. McGuire, et al.*, 1996 WL 684400 (D.Conn. March 21, 1996)(granting summary judgment); *Burrell v. Lucas*, 1992 WL 336763 (D.Conn. Oct. 14, 1992)(summary judgment granted) *Soto v. Meachum*, 1991 WL 218481 (D.Conn. August 28, 1991)(granting summary judgment). Plaintiffs have completely failed to comply with this Rule, in that no Rule 9(c)(2) Statement was filed by them. However, in the interests of judicial fairness, the Court will briefly consider the issues in this case and decide the case on the merits. However, all facts set forth in Defendants' complying Rule 9(c)(1) Statements will be deemed admitted by Plaintiff for purposes of this Motion.

Nationwide is engaged in the sale and servicing of various insurance products throughout this country, including Connecticut. It distributes its products directly to the public through both employee agents and independent contractor agents. In contrast to Nationwide's employee agents, Nationwide's independent contractor agents operate individually, separately from one another as individual or corporate insurance agencies.

Commencing in 1982 and at all relevant times thereafter, McMahon was an independent contractor agent for Nationwide pursuant to a series of standard form Agent's Agreements. Consistent with the Agent's Agreements, McMahon had, *inter alios*, "the right to exercise independent judgment as to time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of this Agreement"; was obligated "to pay all expenses in connection with [his] Nationwide Insurance agency"; and was "solely responsible for paying all federal, state and local estimated income and self-employment taxes as well as the timely and correct reporting and paying of all taxes".

McMahon was solely responsible for the hiring and working conditions of his staff, without input, interference, or approval from Nationwide. He personally chose which individuals he would hire and personally explained to them the requirements for the position and the work they were to perform. McMahon personally hired Plaintiff in September of 1996 and did not consult with Nationwide in making that decision.

McMahon granted leaves of absence to his employees, personally paid the salaries of his employees, personally paid their overtime wages, personally withheld all payroll taxes, provided his employees with W–2 forms listing himself or his agency as the employer, required weekly timesheets, controlled the work schedule of his employees and provided his employees with his own Agency's employee manual to follow. His employees were never given the Nationwide employee manual.

Further, McMahon personally granted all raises to his employees, told them where to sit in the office, monitored and decided how many sick, vacation and personal days his employees were to receive on an annual basis, and had unfettered discretion in the termination of an employee's employment.

At or near the time of her hire, Plaintiff filled out tax forms for state and federal authorities listing the McMahon Agency as her employer. Consistent with these

forms, Plaintiff's 1999, 1998, 1997 and 1996 W–2 Wage and Tax Statements filed with her income tax returns listed the McMahon Agency as her employer and were devoid of any reference to Nationwide.

Plaintiff's salary was paid by checks issued by the "Edward McMahon Insurance" and were written by McMahon. Nationwide never paid Plaintiff for any of the work she did for the McMahon Agency. Further, Plaintiff's pay stubs state that the McMahon Agency withheld her social security taxes and her federal and state income taxes. Finally, Nationwide provided no benefits of any kind to Plaintiff; rather, they were given to her by McMahon.

Defendant Miles is a sales growth manager for Nationwide and was the intermediary to provide assistance in the agent-principal relationship between Nationwide and the McMahon Agency. On March 30, 1999, Plaintiff requested a meeting with Miles to discuss conduct by McMahon which she alleged was improper. Responding to this request Miles met the next day with Plaintiff and Maxine Moody, another McMahon employee. During that meeting, Plaintiff and Moody alleged that McMahon had engaged in improper insurance business practices and also alleged that they were being subjected to "sexual harassment" at the McMahon Agency. The alleged harassment was due to McMahon's use of his personal computer to go on line to sexually suggestive chat rooms.

Miles suggested to McMahon that he move his personal computer into his own office, which McMahon complied with, although he was under no obligation to do so.

On April 9, 1999, Plaintiff left her employ with the McMahon Agency. Upon ending her employment, Plaintiff received all sums owed to her for her unused personal and vacation time. The payment was issued on a McMahon Agency check and was signed by McMahon.

Shortly thereafter, Plaintiff applied for unemployment benefits. In her application she listed the McMahon Agency, not Nationwide, as her employer.

Plaintiff next filed a complaint affidavit against McMahon and Nationwide with the CHRO on May 5, 1999, advising further that she wished her complaint to be simultaneously filed with the EEOC. Plaintiff never named Miles in either complaint. She received right to sue letters as to McMahon and Nationwide.

### *LEGAL ANALYSIS*

#### I. *The Standard of Review*

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d. Cir.1995)(movant's burden satisfied if it can point to an absence of evidence to

support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original).

"Indeed the salutary purposes of summary judgment—avoiding protracted, expensive, and harassing trials—apply no less to discrimination cases...", such as is the present Complaint. *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). *Accord, McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir.1994)(summary judgment available for dismissal of dis-

crimination claims in cases lacking genuine issues of material fact).

## II. *The Standard As Applied*

### A. *Nationwide As Plaintiffs' Employer*

■ The Complaint contains claims against Nationwide for alleged violations of Title VII and the Connecticut Fair Employment Practices Act ("CFEPA"). However, each of the anti-discrimination acts provides only for the liability of an "employer". *See* 42 U.S.C. § 2000e–2(a)(1).(Title VII)("It shall be an unlawful employment practice for an **employer** ..."); Conn.Gen.Stat. (equal pay)("No employer having employees subject to any provision of this statute shall discriminate ...."); 42 U.S.C. § 2000e–2a (Title VII)("It shall be an unlawful employment practice for an employer...."); Conn. Gen.Stat. § 46a–60(a)(1)(discriminatory employment practices)("It shall be a discriminatory practice in violation of this section for an **employer** ...."). Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). CFEPA's definition is identical. *See* Conn.Gen.Stat. § 46a–51(9).

In defining an "employee", the most recent test enunciated by the Second Circuit Court of Appeals may be found in *Pietras v. Board of Fire Commissioners of Farmingville*, 180 F.3d 468 (2d Cir.1999). In *Pietras*, the question was whether a probationary firefighter was an "employee" for purposes of Title VII. The *Pietras* Court cited *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), for the common sense proposition that "Congress had in mind 'the conventional master-servant relationship as understood by common-law agency doctrine.' "[1] Within that framework, the

---

1. Pietras was found to be employed by the     Board, as she received numerous firefighters

Second Circuit has stated that the question of whether someone is an employee for purposes of Title VII usually turns on whether he or she has received "direct or indirect remuneration from the alleged employer." *Pietras*, 180 F.3d at 473, *citing O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir.1997), *cert. denied* 522 U.S. 1114, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998). The *Pietras* Court held that "indirect remuneration" meant "significant benefits" such as "disability pension, survivors' benefits, group life insurance, and scholarships for dependents upon death." *Id.* at 473, *citing to Haavistola v. Community Fire Co.*, 6 F.3d 211, 221–22 (4th Cir.1993)(plaintiff volunteer firefighter employee of the fire company because she received significant indirect remuneration from company). It cannot be claimed that Plaintiff received any direct remuneration from Nationwide and it is clear that Plaintiff did not receive any such indirect benefits from Nationwide, as required by *Pietras*.

The *O'Connor* Court discussed the principles of the common-law of agency as set forth in *Nationwide*. The court determined that only when an individual was "hired" by a corporation was he or she an employee of that corporation. *Id.* at 115. The *O'Connor* Court also held that compensation "is an essential condition to the employee-employer relationship." *Id.* at 116, *citing Graves v. Women's Prof'l Rodeo Association*, 907 F.2d 71, 73 (8th Cir. 1990). Accordingly, it was determined that the defendant at issue was not an employer because, as a work study student, the plaintiff received no salary or other wages, and no employee benefits such as health insurance or vacation or sick pay, nor was she promised any compensation.

benefits from the Board, as mandated by state

■ This "essential" condition of remuneration has been recognized by the lower Courts of this Circuit as well. In *Tadros v. Coleman*, 717 F.Supp. 996 (S.D.N.Y. 1989), *aff'd* 898 F.2d 10 (2d. Cir.), *cert. denied*, 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990), the Court found that Cornell Medical College was not the employer of a volunteer on its faculty inasmuch as the plaintiff did not receive any salary, health benefits or retirement benefits, and also had no hours assigned him by the hospital. The antidiscrimination statutes are "**only** available to employees . . . seeking redress for unlawful acts of their **employers**." *Tadros*, 717 F.Supp. at 1002 (emphasis added).

Under this remuneration test, it is also patently clear that Nationwide was not the employer of the Plaintiff herein. All of the acoutrements of the employer-employee relationship were between Plaintiff and McMahon. Nationwide did not pay any of Plaintiff's salary, offered no health or retirement benefits, gave no sick or vacation time, gave no disability or survivor's benefits and did not control the hours worked by Plaintiff. All of the remuneration received by Plaintiff came from McMahon, not Nationwide.

■ The four-factor test set down in *Owens v. American National Red Cross*, 673 F.Supp. 1156 (D.Conn.1987) is further support for Nationwide's position. In *Owens*, the plaintiff brought an action for wrongful discharge and breach of contract against the local chapter of the Red Cross and its national parent, American National Red Cross ("ANRC"). Owens asserted that ANRC, along with the local chapter, was liable to her because ANRC was her employer for purposes of her wrongful discharge. The court applied a four-factor test originally developed by the National

law.

Labor Relations Board ("NLRB") and endorsed by the Supreme Court in *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965)(per curiam) in order to determine whether two or more apparent entities are actually a single entity in its relationship to employees. The *Owens* Court noted that this test had been utilized in a Title VII case, *Baker v. Stuart Broadcasting Company*, 560 F.2d 389, 392 (8th Cir.1977). The court also noted a recent Title VII case which was virtually identical to the one before it in which the court, applying the four-factor test, determined that the ANRC was not the employer of the plaintiff therein and dismissed the ANRC as a defendant.

The four factors are:

1) functional interrelation of operations;

2) centralized control of labor relations;

3) common management; and

4) common ownership or financial control.

An application of these factors clearly favors Nationwide. First, there was no functional interrelation of operations. Pursuant to the Agents Agreement, McMahon was an independent contractor, acting solely within his own discretion. Nationwide had nothing whatsoever to do with the day-to-day operations of this independent entity.

The second factor—centralized control of labor relations—is not truly applicable to this case. Suffice it to reiterate that the day-to-day employment assignments, benefits, and all other indicia of employment were between McMahon and his employees. Nationwide did not hire, supervise, train or discharge McMahon's employees. This factor, then, favors Nationwide.

The third factor is wholly inapplicable to this case, as there was no common management among Nationwide, Miles and McMahon. As profusely noted in the Statement of Facts, McMahon, as an independent contractor had complete discretion as to the management of his agency, with no imput from Nationwide.

The fourth factor clearly favors Nationwide. As just noted, McMahon's unfettered discretion in the running of his agency, as an independent contractor, is the antithesis of common ownership or financial control.

In toto, then, Nationwide was not the employer of Plaintiff and summary judgment is GRANTED as to Counts Two, Four and Five.

### B. *Title VII and CFEPA Claims Against Steven Miles*

Plaintiff has brought the identical claims under CFEPA against Miles as she has against Nationwide. Her allegations are to no avail.

■ The Second Circuit has squarely held that Title VII does not create individual liability for supervisors. *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995), *abrogated on other grounds, Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Noting that Title VII applies only to employers who have fifteen or more employees, the Second Circuit found it "inconceivable" that a Congress concerned with protecting small employers from its reach would simultaneously allow civil liability for individual employees. *Tomka*, 66 F.3d at 1314. Well-settled law, then, warrants the entry of summary judgment in favor of Miles on Counts Two and Four.

■ The Court is aware that there is split of authority on the question of individual liability under CFEPA and that no Connecticut Appellate Court has determined the issue. However, after analysis

of the cases cited by the parties on each side of the issue, this Court finds the more persuasive reasoning to be found in those cases finding no individual liability under Subsections (1) and (7). Although Subsections 46a–60(a)(1) and (7) make it unlawful for "an **employer**, by himself or his agent" to discharge or discriminate against an individual in the terms, condition or privileges of employment, Subsection (5) alters this prohibition and states that "**no person**" may aid or abet discrimination. "This distinction in the choice of language is significant. It is a basic rule of statutory construction that when the legislature had an opportunity to include a class of entities in its prohibition against certain acts, but did not do so, the legislature intended, by omission, not to include such class." *Wasik v. Stevens Lincoln–Mercury,* 2000 WL 306048 at * 6 (D.Conn. 2000)(DJS)(no individual liability under any subsection referring to "employer"), *cited in Miner v. Town of Cheshire,* 126 F.Supp.2d 184, 202 (D.Conn. 2000)(SRU)(same). *Accord Cox v. Namnoun, et al.,* 1996 U.S. Dist. LEXIS 22586 (D.Conn.1996)(AVC)(same).

Accordingly, summary judgment is GRANTED to Miles on Count Five.

#### C. *Aiding and Abetting Under CFE-PA § 46–60(a)(5)*

Subsection 60(a)(5) provides that it is a violation of CFEPA for anyone "whether an employer or not" to "aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so." Plaintiff points to no genuine issue of material fact as to this Count. "By its language, this provision contemplates liability for a party who in some way helps or compels another to act in a discriminatory manner." *Wasik,* 2000 WL 306048 at * 7. *See Bogdahn v. Hamilton Standard Space*

*Systems, Int'l,* 46 Conn.Supp. 153, 159, 741 A.2d 1003 (Conn.Super.1999)(recognizing as a cognizable claim for aiding and abetting, conduct whereby an employer and other employees' actions "ratified, endorsed, and perpetrated another employee's harassing conduct"). Under the authority of *Bogdahn,* it is beyond cavil that Nationwide did nothing to ratify, endorse or perpetrate McMahon's alleged harassing conduct. To the contrary, Miles asked McMahon to move his personal computer into his own office, a request McMahon complied with. This is the antithesis of aiding and abetting a discriminatory act.

"Failure to act has not been held to be a basis for aider and abettor liability absent a duty to act." *Rota v. Colonial Realty/USA Corp.,* 1996 WL 434228 at*9 (Conn.Super.1996) (securities fraud). Nationwide had no duty to involve itself in the actions of an independent contractor. *See* Agent's Agreement. Even if it did, it did so through the person of Miles, who affirmatively responded to Plaintiff's allegations.

Accordingly, summary judgment must be granted as to Count Six.

#### D. *Exhaustion of Administrative Remedies Against Steven Miles*

Both Title VII and CFEPA require exhaustion of administrative remedies against the parties named in the complaint. To fail to do so is fatal under both statutes. Plaintiff never named Miles as a respondent in either petition and, quite naturally, never received a right to sue letter as to him. Accordingly, Miles is not a proper party under either the Title VII or CFEPA Counts for this reason also.

#### E. *Intentional Infliction of Emotional Distress*

Plaintiff fails to set forth a claim for the intentional infliction of emotional

distress. In order to establish such a cause of action, a plaintiff must demonstrate: (1) that the defendant intended to inflict emotional distress, or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986).

■ The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent. The Connecticut Supreme Court has defined the term "extreme and outrageous conduct": "The rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Petyan*, 200 Conn. at 254 n. 5, 510 A.2d 1337, *quoting* Prosser and Keeton, *Torts* (5th ed.1984) § 12, p. 60.

■ Whether a defendant's conduct can be considered extreme and outrageous is a matter of law for the Court in the first instance. *Kintner v. Nidec–Torin Corp.*, 662 F.Supp. 112, 114 (D.Conn.1987). Mere conclusory allegations are insufficient to support a cause of action for this tort. *Huff v. West Haven Board of Education*, 10 F.Supp.2d 117, 122 (D.Conn.1998).

■ Plaintiff has completely failed to demonstrate that Defendants' treatment of her was "extreme" or "outrageous", in any manner. Nor could she, as she had no dealings with Nationwide nor Miles in this context. Summary judgment is, accordingly, granted on this Cause of Action.

### F. *Negligent Infliction of Emotional Distress*

■ Finally, the claim of negligent infliction of emotional distress fails, also. To support a claim for negligent infliction of emotional distress, Plaintiff had the "burden of pleading and establishing that 'the [D]efendant[s] should have realized that [their] conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.'" *Morris v. Hartford Courant, Co.*, 200 Conn. 676, 683, 513 A.2d 66 (1986) (citation and emphasis omitted). When the alleged infliction occurs in the workplace Connecticut imposes additional requirements. "[N]egligent infliction of emotional distress in the employment context arises only where it is 'based upon unreasonable conduct of the defendant in the termination process.' The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. 'The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.'" *Parsons v. United Technologies Corp.*, 243 Conn. 66, 88–89, 700 A.2d 655 (1997), *citing Morris v. Hartford Courant Co.*, 200 Conn. 676, 682, 513 A.2d 66 (1986) *and Madani v. Kendall Ford, Inc.*, 312 Or. 198, 204, 818 P.2d 930 (1991).

■ In the present case, Plaintiff was not even terminated by either of the Defendants, but voluntarily left her employment with the McMahon Agency. Accordingly, she completely fails to set forth any genuine issues of material fact as to this tort. Even if Plaintiff successfully alleged that she was forced to leave the employ due to McMahon's conduct, she would still fail to set forth a cause of action against Nationwide and Miles, as they had nothing

to do with her ceasing employment with the McMahon Agency.

The Court disagrees that this law is outdated. The few Superior Courts which have held that this cause of action exists outside of the termination context are simply failing to follow the law of the Supreme Court of Connecticut. This Court will not follow suit. Like Plaintiff's claim for the intentional infliction of emotional distress, this claim is without merit due to Plaintiff's failure to allege any material facts in support of this tort. Accordingly, summary judgment is granted on this Cause of Action.

## CONCLUSION

Inasmuch as Plaintiff has failed to set forth any genuine issues of material fact on which she would bear the burden at trial, Defendants' Motion for Summary Judgment [Doc. No. 54] is GRANTED. The Clerk is directed to close this case.

SO ORDERED.