DECISION
This is an appeal by plaintiff-appellant, James B. Oglesby, from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Gwendolyn H. Rogers.
On June 25, 1999, plaintiff filed a complaint, naming as defendants the City of Columbus, the Civil Service Commission, Gwendolyn H. Rogers and various unknown individuals designated as John Doe and/or Jane Doe. In the complaint, plaintiff alleged that in 1982 he was hired by the City of Columbus, Department of Public Utilities, and that in 1990 he was "loaned" to the Equal Business Opportunity Commission Office ("EBOC"). It was alleged that on October 26, 1995, defendant Rogers, executive director of the EBOC, falsely accused plaintiff, in writing, of theft and work duty violations, and that Rogers demanded that plaintiff be transferred back to the Department of Public Utilities ("DPU") where he had not worked for approximately five years. Plaintiff alleged that in November 1995, he was placed on administrative leave and never recalled. Plaintiff alleged various harms as a result of defendant Rogers' actions, including interference with contract, wrongful termination, and intentional infliction of emotional distress.
On March 15, 2000, defendants filed a motion to dismiss or, alternatively, a motion for summary judgment. On April 14, 2000, the trial court filed a decision granting defendants' motion to dismiss. Plaintiff subsequently filed a notice of appeal from the judgment of the trial court.
This court rendered a decision on February 8, 2001, affirming in part and reversing in part the judgment of the trial court. Oglesby v. City of Columbus (2001), Franklin App. No. 00AP-544. Specifically, this court found no error in the trial court's decision to dismiss plaintiff's breach of contract and interference with contract claims pursuant to Civ.R. 12(B)(6). However, this court further held that the trial court improperly concluded that count five of plaintiff's complaint set forth a cause of action for defamation rather than intentional infliction of emotional distress. This court, in construing the facts in plaintiff's complaint in a light most favorable to plaintiff, found that the trial court erred in dismissing his claim for intentional infliction of emotional distress pursuant to Civ.R. 12(B)(6). Accordingly, the matter was remanded to the trial court for further proceedings.
On July 31, 2001, defendant Rogers filed a motion for leave to file a motion for summary judgment, which the trial court granted. On August 2, 2001, defendant filed a motion for summary judgment. Attached to the motion was the affidavit of Rogers. On August 23, 2001, plaintiff filed a response to defendant's motion for summary judgment.
On September 24, 2001, the trial court filed a decision granting defendant's motion for summary judgment. The decision of the trial court was journalized by judgment entry filed October 12, 2001.
On appeal, plaintiff sets forth the following single assignment of error for review:
 THE TRIAL COURT ERRED WHEN IT GRANTED THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WHEN IT TAKES INTO CONSIDERATION THE IMMUNITY CONFERRED BY R.C. 2744.03 AND THERE IS A GENUINE ISSUE OF MATERIAL FACT IN A CASE INVOLVING AN INTENTIONAL TORT[.]
Under his assignment of error, plaintiff argues that the trial court erred in granting summary judgment as to his intentional tort claim. Plaintiff contends that the two affidavits attached to his response to defendant's motion for summary judgment supported his claim and created a genuine issue of material fact.
In Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385, the Ohio Supreme Court noted the standard of review for summary judgment:
 * * * Before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. * * *
In Irvine v. Akron Beacon Journal (2002), Summit App. No. 20804, 2002-Ohio-3191, at ¶ 48-51, the court set forth the elements of a claim for intentional infliction of emotional distress as follows:
 To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following four elements:
 "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go `beyond all possible bounds of decency' and was such that it can be considered as `utterly intolerable in a civilized community;' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that `no reasonable [person] could be expected to endure it.'" * * *
Significantly, the defendant's conduct must be
 "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" * * *
In support of her motion for summary judgment, defendant Rogers submitted her own affidavit, in which she stated that, as the executive director of the EBOC, she supervises the daily operation of that agency. At the time Rogers became the executive director of the EBOC, plaintiff was employed as a business development assistant with the EBOC, and he had the authority to sign contracts and other documents on behalf of the manager of the EBOC.
Defendant stated in her affidavit that in August 1995, plaintiff ordered furniture and equipment for the EBOC office, but the furniture delivered was the wrong color. Plaintiff informed defendant that the vendor refused to correct the order, but when defendant later questioned plaintiff about the status of the order, plaintiff provided a number of explanations regarding the incorrect order and his contacts with the vendor. Defendant averred that she learned later that plaintiff "had not been honest" about the situation. Defendant also indicated that over a period of time she received complaints that plaintiff was approving documents without first determining whether they complied with the requirements of Title 39 of the Columbus City Code. Defendant averred that, despite her repeated requests, plaintiff failed to conduct a weekly review of all contracts and other documents with her and, as a result, she informed plaintiff that he could no longer sign contracts and other documents on her behalf.
In October 1995, defendant contacted officials with the DPU and informed them of the problems she was having with plaintiff. Defendant requested that plaintiff be transferred back to the DPU. According to defendant, she was asked by one of the officials to detail her concerns in writing. Defendant stated that she prepared a document, sent it to this individual and that, to the best of her knowledge and belief the allegations were true.
Defendant also submitted portions of plaintiff's deposition testimony, in which plaintiff stated that he was not seeing a physician for any emotional problems. When asked during the deposition as to what emotional distress he had suffered, plaintiff stated that he was "humiliated" by the events.
In response to defendant's motion for summary judgment, plaintiff submitted his own affidavit and the affidavit of his sister, Sheila Turner. In his affidavit, plaintiff averred that defendant Rogers disseminated false information about him, and that "since that time and continuing I have been unable to cope, my marriage has suffered, I have been unable to eat and sleep properly." Plaintiff further averred, "I thought the emotional distress would go away but it hasn't. * * * I still get physically sick when I think of how I was treated."
Plaintiff's sister averred in her affidavit that plaintiff "is not as gregarious and outgoing as he was prior to his dismissal." She further stated that she has seen him "tear up," and has also heard his voice "crack" when he talks about the city.
The trial court, in granting summary judgment in favor of defendant, focused upon the second and fourth elements required to support a claim for intentional infliction of emotional distress and found that there was insufficient evidence to support either of those elements. Based upon this court's de novo review, we agree.
Regarding the second element, requiring the actor's conduct to be extreme and outrageous, the affidavit of defendant sets forth her reasons for the actions she undertook with respect to eventually requesting plaintiff's transfer. As indicated above, defendant stated that she requested plaintiff's transfer because he had not been honest about a situation involving a vendor, and because of plaintiff's failure to follow defendant's instructions and other inappropriate conduct resulting in plaintiff not being allowed to sign contracts and documents on behalf of defendant.
The trial court noted that plaintiff's response to defendant's motion for summary judgment contained no discussion of the particular facts of the case, but instead contained vague, general allegations that defendant disseminated false information. Upon review of the record, we agree with the trial court's determination that the conclusory statements offered by plaintiff do not raise a genuine issue of material fact whether defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Irvine, supra at ¶ 51. See Tyszka v. Edward McMahon Agency (D.Conn. 2001),188 F. Supp.2d 186, 196 (mere conclusory allegations that defendant's treatment was extreme or outrageous insufficient to survive motion for summary judgment on plaintiff's intentional infliction of emotional distress claim).
Further, even assuming that plaintiff could show extreme and outrageous conduct, and further assuming a causal relationship, we agree with the trial court's finding that plaintiff failed to met his reciprocal burden with respect to the fourth element, requiring a showing that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it. As noted above, in support of summary judgment defendant submitted the deposition of plaintiff in which he stated that he sought no medical help as a result of his alleged emotional distress. Plaintiff also stated in his deposition that he felt "humiliated."
In response, plaintiff submitted his own affidavit, in which he stated that his marriage had suffered, that he had been unable to eat and sleep properly, and that he becomes physically sick when he thinks of how he was treated. Plaintiff also submitted the affidavit of his sister, in which she stated that plaintiff had become introverted and irritable following the events; she also indicated that she had observed plaintiff "tear up" and had heard his voice "crack" when he talked about the city.
This court has previously noted that a "non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." Powell v. Grant Medical Ctr. (2002), Franklin App. No. 01AP-754. (Emphasis sic.) Further, "[a] plaintiff claiming severe and debili-tating emotional distress must present some `guarantee of genuineness' in support of his or her claim to prevent summary judgment in favor of the defendant." Id.
As noted, plaintiff submitted no medical evidence regarding his claims, but relied instead upon his own deposition and the deposition of his sister. In fact, the record indicates that plaintiff was neither treated nor did he seek medical help for the distress he allegedly suffered. While the symptoms described by plaintiff may be common to individuals who have felt wrongly treated by workplace circumstances, the evidence is insufficient to show that plaintiff sustained debilitating injuries, or that his anguish was so severe that no reasonable person could endure it. Jones v. White (1997), Summit App. No. 18109 (affidavit testimony that plaintiff was distressed, upset, anxious, overwrought and sobbing uncontrollably, and plaintiff's own statements that she has insomnia, is agitated and experiences muscle tension, nausea, vomiting and diarrhea, without more, does not rise to the required level of seriousness). See, also, Halton v. Great Clips, Inc. (N.D.Ohio. 2000),94 F. Supp.2d 856, 871 (claims by plaintiffs that they suffered humiliation, embarrassment and stress insufficient to rise to the level necessary to constitute the type of physical or serious emotional injury contemplated in the tort of intentional infliction of emotional distress).
Based upon the foregoing, we find that the trial court properly concluded that there was insufficient evidence from which reasonable minds could conclude either that defendant's conduct was extreme and outrageous, or that plaintiff suffered severe emotional distress. Accordingly, plaintiff's single assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
PETREE and LAZARUS, JJ., concur.