Leigh BOLICK, Plaintiff,

v.

ALEA GROUP HOLDINGS, LTD.,
et al., Defendants.

No. CIV.3:03CV165(PCD).

United States District Court,
D. Connecticut.

Aug. 5, 2003.

Barbara E. Gardner, Manchester, CT, for Plaintiff.

Mary A. Gambardella, Epstein, Becker & Green, P.C., Stamford, CT, Barry Asen, Epstein, Becker & Green, P.C., New York City, Peter E. Gillespie, Westport, CT, David L. Weissman, Saundra M. Yaklin, Reed Smith, New York City, for Defendants.

### RULING ON MOTION TO DISMISS

DORSEY, District Judge.

Defendant Bennett moves to dismiss Counts One and Two for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth herein, Bennett's motion is **granted** in part and **denied** in part.

## I. BACKGROUND

The following facts, as alleged in Plaintiff's Amended Complaint (Doc. No. 29), are taken as true for purposes of the instant motion.

Plaintiff was hired by Alea[1] in October 2000 as an Assistant Vice President for Marketing. (Am.Compl.¶ 8.) From the time of Plaintiff's hire until leaving the company in February 2002, Defendant John Bennett was Senior Vice President of Marketing for Alea and was Plaintiff's supervisor. (*Id.* ¶ 7.)

On a business trip during the week of October 16, 2000 and again two weeks later, Bennett attempted to discuss matters of a sexual nature with Plaintiff and engage in physical contact with her. (*Id.* ¶¶ 10, 12–13, 15). On November 6, 2000, Plaintiff complained to Defendant Robert Byler, the Chief Executive Officer of Alea Alternative Risk, to whom Bennett reported, of Bennett's "aggressive posturing, physical contact and intimidation." Byler

did not report Plaintiff's complaints to Human Resources, however, he promised not to require that Plaintiff travel again with Bennett. (*Id.* ¶ 17.) At the office Bennett continued making inappropriate comments to Plaintiff. (*Id.* ¶ 20.) His behavior "would be complimentary on one occasion and demeaning and abusive on another," causing Plaintiff anxiety and interfering with her ability to work. (*Id.* ¶ 18.)

In May 2001, after a meeting unrelated to the sexual harassment complaint, Bennett confronted Plaintiff about her speaking with Byler behind his back. (*Id.* ¶ 19.) Despite this confrontation, Plaintiff was informed that she would be getting a promotion to Vice President of Marketing and a salary increase effective in or about August 2001. As part of this position she would be Bennett's "right hand man," handling captive business and helping to grow the department. (*Id.* ¶ 21.)

In December 2001, Bennett and Plaintiff went on another business trip together. Again Bennett made inappropriate comments (*Id.* ¶ 22) and engaged in physical contact that made Plaintiff uncomfortable. (*Id.* ¶ 23.) Upon return from this trip, on January 9, 2002, Bennett informed Plaintiff that she would not receive the benefits she had been promised. Rather, Plaintiff would be handling only individual account business in a regular territory. Additionally, new Vice Presidents would be hired. (*Id.* ¶ 26.)

The following day, Plaintiff reported sexual harassment by Bennett to Human Resources and began ongoing counseling (*Id.* ¶ 27) and working at home more frequently. (*Id.* ¶ 30.) Subsequently, in February 2002, Plaintiff became aware that Bennett was leaving Alea. (*Id.* ¶ 28.)

---

1. Alea refers to both Alea Group Holdings, Ltd. and Alea North America Co.

Despite Bennett's leaving Alea, Plaintiff faced continued problems at work over the next several months.[2] (*Id.* ¶¶ 31–34, 36–37.) At the end of March 2002, Plaintiff took some time off due to anxiety from the conduct of the defendants. (*Id.* ¶ 35.) In April 2002, Plaintiff received a promotion and salary increase, though she was still earning less than three new hires. (*Id.* ¶ 33.) Plaintiff did not, however, receive a 2001 bonus from Alea. (*Id.* ¶ 42.)

In May 2002, Plaintiff complained to Byler that she believed she was being retaliated against for her complaint of sexual harassment. Marti Lametta, Vice President of Human Resources, and Leonard Goldberg, Chairman and Chief Executive Officer of Alea North America Co., informed Plaintiff that they did not believe she was being retaliated against. (*Id.* ¶ 39.) In September 2002, Plaintiff became ill and was unable to continue work as a result of Defendants' conduct. (*Id.* ¶ 40.)

Plaintiff alleges Bennett's violations of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a–60 *et seq.* Count One alleges that Bennett aided and abetted discrimination under Conn. Gen.Stat. §§ 46a–60(1), (5), (8). Count Two alleges that Bennett aided and abetted retaliation under Conn. Gen. Stat. §§ 46a–60(4), (5).

## II. DISCUSSION

### A. Standard of Review

The function of a motion to dismiss for failure to state a claim pursuant to Fed.

R.Civ.P. 12(b)(6) is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 776 (2d Cir.1984) (citation omitted). "A motion to dismiss . . . should be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Miner v. Cheshire,* 126 F.Supp.2d 184, 187 (D.Conn. 2000) (citation omitted) (internal quotation marks omitted). Construing the complaint liberally, the facts set out in the plaintiff's complaint must be accepted as true, with inferences drawn from those allegations in the light most favorable to the plaintiff. *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The issue is not whether the plaintiff will prevail, but rather whether he or she should have the opportunity to prove his or her claims. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. Individual Liability Under CFEPA

As a threshold matter, individual liability under CFEPA must be established. Connecticut courts generally look to interpretations of federal anti-discrimination laws to interpret CFEPA. *Distasi v. Sikorsky Aircraft Corp.,* No.

---

**2.** Plaintiff alleges that she was not involved in the hiring of the new Vice Presidents. (Am. Compl.¶ 31.) Once these new hires started work, Plaintiff asked Byler to change her title to Vice President, which he refused to do. (*Id.* ¶ 36.) Byler also denied Plaintiff the ability to go to a conference which she would pay for as it was characterized as "over her head". (*Id.* ¶ 34.) Additionally, Plaintiff was paid less than the new hires. (*Id.* ¶¶ 31, 33.)

At the first meeting with these new employees, Byler "berated" and "humiliated" Plaintiff. (*Id.* ¶ 36.) The new hires were also assigned to the most desirable territory while Plaintiff had to travel to the South (*Id.* ¶ 31) with one new hire assigned the largest captive territory, with Plaintiff as his assistant, despite being told as later as January 2002 that she would be in charge of the captive unit. (*Id.* ¶ 37.)

3:99CV00383, 1999 WL 1421655, at *3 n. 2 (D.Conn. Nov. 29, 1999) (citation omitted). While there is no individual liability under Title VII, *Cullen v. Putnam Savings Bank, Inc.*, No. 3:96CV2315, 1997 WL 280502, at *4 (D.Conn. May 17, 1997), state statutes may provide a cause of action against individual defendants for aiding and abetting where the corresponding federal statute does not. *Id.* 1997 WL 280502 at *5; *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995).

 In interpreting Connecticut statutes, "[i]t is a basic rule of statutory construction that when the legislature had an opportunity to include a class of entities in its prohibition, but did not do so, the legislature intended, by omission, not to include such class." *Wasik v. Stevens Lincoln–Mercury, Inc.*, No. 3:98CV1083, 2000 WL 306048, at *6 (D.Conn. Mar. 20, 2000). "[W]hen the legislature has intended for the provisions of the Fair Employment Practices Act to apply to persons other than employers, it has made its intention clear." *Perodeau v. City of Hartford,* 259 Conn. 729, 792 A.2d 752, 758 (2002).

 Count One of Plaintiff's complaint alleges violation of both §§ 46a–60(1) and (8), as well as aiding and abetting liability under (5). As (1) and (8) refer to an "employer" specifically, they create no individual supervisory liability, *Perodeau,* 792 A.2d at 761, and those charges cannot be brought against Bennett. *Miner,* 126 F.Supp.2d at 203. Individual liability, however, does exist under (5) for "any person" for aiding and abetting the discriminatory conduct of the employer. *Tyszka v. Edward McMahon Agency,* 188 F.Supp.2d 186, 195 (D.Conn.2001). As (4), implicated in Count Two, reads "any person," there is individual liability for retaliatory action, as well as aiding and abetting such conduct. *See Wasik,* 2000 WL 306048, at *3–6.

## C. Count One— Discrimination

 Bennett argues that there is no aiding and abetting liability under CFEPA when one is the primary perpetrator of the alleged discrimination. (Mot. to Dismiss Pl.'s Compl. as to Def. Bennett). Connecticut courts have not previously answered the question of whether one can aid and abet his or her own wrongful conduct, *Rider v. Town of Farmington,* 162 F.Supp.2d 45, 54 (D.Conn.2001).[3]

"In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature .... In seeking to discern that intent, we look to the words of the statute itself ...." *Perodeau,* 792 A.2d at 756–57 (quoting *Doyle v. Metro. Prop. & Cas. Ins. Co.,* 252 Conn. 79, 743 A.2d 156, 158 (1999)) (internal quotation marks omitted).[4] That language is construed according to the commonly approved usage of the words, Conn. Gen.Stat. § 1–1(a), for which it is appropriate to look to the dictionary definition. *Id.* at 757 (citation omitted).

---

**3.** When other courts have approached the question of whether one can aid and abet himself under state discrimination laws, the answer has repeatedly been in the negative. *See Dici v. Commonwealth of Pa.,* 91 F.3d 542, 551–52 (3d Cir.1996) (denying individual liability for the perpetrator but holding liability for the supervisor of that perpetrator for inaction); *Newsome v. Admin. Office of the Courts of N.J.,* 103 F.Supp.2d 807, 823 (D.N.J. 2000) ("Moreover, Coleman, as the principle wrongdoer, cannot aid and abet his own wrongful conduct.").

**4.** CFEPA's aiding and abetting provision reads that it is a discriminatory practice "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory practice or an attempt to do so ...." Conn. Gen.Stat. § 46–60(a)(5).

The dictionary defines "abettor" as a person who abets (incites or encourages) *an offender. The New Shorter Oxford English Dictionary* 4 (Lesley Brown, ed., Oxford Univ. Press 1993) (emphasis added). As a legal definition, "[a]id and abet is not a needless redundancy, ... it is a term of art meaning to *assist the perpetrator* of the crime while sharing the requisite intent." *A Dictionary of Model Legal Usage* (Bryan A. Garner, ed., Oxford Univ. Press 1990) (quoting *United States v. Martinez*, 555 F.2d 1269, 1271 (5th Cir.1977)) (internal quotation marks omitted; emphasis added). "By its plain language, this provision appears to contemplate liability towards a party who in some way helps or compels *another* to act in a discriminatory manner." *Wasik*, 2000 WL 306048, at *7 (citation omitted; emphasis added).

"[T]he plain meaning of a statute is normally controlling, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Tomka*, 66 F.3d at 1313 (internal quotation marks omitted) (citation omitted). To apply the aiding and abetting provision of CFEPA against an employee who was the sole perpetrator of the alleged harassment would produce an illogical result. "[S]uch an application creates a strange and confusing circularity where the person who has directly perpetrated the harassment only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator." *Perks v. Town of Huntington*, 96 F.Supp.2d 222,

228 (E.D.N.Y.2000) (interpreting the New York Human Rights Law, whose aiding and abetting provision is substantially similar to CFEPA) (internal citation omitted).

CFEPA aiding and abetting liability thus requires that the individual assists another person in discriminatory conduct and a sole perpetrator cannot be held liable. Under the facts alleged in the instant case, Bennett was the sole perpetrator and was not aiding or abetting another's wrongful behavior. To hold Bennett liable would produce this illogical circular result.

*Tomka*, allowing aiding and abetting liability against a perpetrator, is still the law of the Second Circuit. The instant case is easily distinguished. In *Tomka* the individual held liable was acting with others to harass the plaintiff and create a hostile work environment. *Tomka*, 66 F.3d at 1300–1303; *see also Perks*, 96 F.Supp.2d at 228 n. 2 (noting concerted action as a possible reason for finding aiding and abetting liability). Bennett, however, was the sole perpetrator of the active harassment, aligning the instant case with *Wasik*, where aiding and abetting charges were dismissed against an individual defendant that called plaintiff names. *Wasik*, 2000 WL 306048, at *7.

Plaintiff has not alleged facts sufficient to show that Bennett aided and abetted Alea in its discriminatory behavior.[5] Bennett was the perpetrator of discrimination that Alea took action against (Am. Compl.¶¶ 17, 28) and cannot aid and abet

---

**5.** While an employer cannot aid and abet his own discriminatory practice, *Jones v. Gem Chevrolet*, 166 F.Supp.2d 647, 649 n. 1 (D.Conn.2001), an individual may aid and abet his employer's discrimination. *Id.* at 650. This individual liability is particularly applicable to supervisors in the use of their authority, even where the employer's liability is derived from the supervisor's wrongful conduct. *Wasik*, 2000 WL 306048 at *6. The

facts must show that an individual supervisor aided and abetted the employer in allowing discrimination to continue. *Rider*, 162 F.Supp.2d at 54 (denying individual liability where action was taken against a person engaged in discriminatory conduct); *see also Tyszka v. Edward McMahon Agency*, 188 F.Supp.2d 186, 195 (D.Conn.2001) (holding against aiding and abetting liability where the employer took action against the perpetrator).

himself. The complaint against Alea does not invoke Bennett's conduct. The motion is granted with regard to Count One.

## D. Count Two— Retaliation

■ To allege a case of retaliation under CFEPA, a plaintiff must claim that "(1) [she] was engaged in a protected activity; (2)[her] employer was aware of that activity; (3)[she] suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996) (citations omitted).[6] Bennett challenges that he was aware of Plaintiff's protected activity (Mot. to Dismiss Pl.'s Compl. at 8), that Plaintiff suffered adverse employment actions (*Id.* at 9), and the causal connection between himself and the adverse actions taken against Plaintiff (*Id.* at 10).

■ Read liberally-as the complaint must be at this stage (IIA, *supra*)-Plaintiff has alleged Bennett could have knowledge of Plaintiff's protected activity. After Plaintiff discussed Bennett's inappropriate actions with Byler, Plaintiff alleges that Bennett confronted her about talking to Byler behind his back. (Am.Compl.¶ 19.)

"A plaintiff may suffer an adverse employment action if she endures a materially adverse change in the terms and conditions of employment." *O'Bar v. Borough of Naugatuck*, 260 F.Supp.2d 514, 517 (D.Conn.2003) (denying judgment as a matter of law, as taken *in toto* the employ-ment repercussions could amount to retaliation) (quoting *Richardson v. New York Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir.1999)) (internal quotation marks omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.* (citation omitted). Even with this loose definition, the Second Circuit, however, has noted that "not every unpleasant matter short of discharge or demotion constitutes an adverse employment action." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997).

"Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Id.* (citation omitted). Plaintiff alleges numerous changes in her employment terms and conditions following each of her complaints of sexual harassment by Bennett. (Am. Compl.¶¶ 18–19, 20–26, 29–34, 36–39).

The causal connection between a defendant's actions and the alleged adverse employment action "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Peters*, 2003 WL 1343265 at *9 (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 218 (2d Cir.2001)). The Second Circuit has not set a bright-line rule as to when this temporal link be-

---

**6.** Whether Plaintiff prevails on her discrimination charge against Bennett does not prevent her from proceeding with a retaliation claim so long as she "can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir.2002) (citation omitted). "It sometimes happens— more frequently than might be imagined— that an employee who's primary claim of discrimination cannot survive pre-trial dispositive motions is able to take to trial the secondary claim that he or she was fired or adversely affected in retaliation for asserting the primary claim." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 759 (2d Cir.1998) (affirming dismissal of harassment claim and vacating dismissal or retaliation claims).

comes too attenuated to demonstrate causation. *Gorman–Bakos v. Cornell Co–op. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir.2001). Retaliatory animus, however, can also be used to show the causal connection, *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990), and relax the temporal nexus requirement. *Parrish v. Sollecito*, 258 F.Supp.2d 264, 268 (S.D.N.Y.2003).

Plaintiff complained to Byler about Bennett the week of November 6, 2000 (Am. Compl.¶ 17)[7] and immediately after finding Bennett's behavior to be erratic (¶ 18), leading to confrontations (¶¶ 19, 25) and other changes beginning in May 2001 and continuing until January 2002. (¶¶ 18–26.) At this time Bennett informed Plaintiff that she would not be receiving benefits she had been promised. (¶ 26.) After filing a formal complaint on January 10, 2002 (¶ 27), Plaintiff suffered adverse actions as early as February 2002. (¶ 29.) The denial of benefits Bennett assured Plaintiff continued even after his leaving Alea. (¶¶ 29–34, 36–39.) These alleged facts are sufficient to establish the requisite causal connection. *Cf. Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d. Cir. 2002), *cert. denied*, 537 U.S. 813, 123 S.Ct. 74, 154 L.Ed.2d 16 (2002) (inferring a causal relationship despite adverse action not following immediately after protected activity where a reasonable juror could conclude the connection).

Bennett is subject to individual liability for retaliation against Plaintiff both for committing retaliatory acts himself and for aiding and abetting Alea in the commission of such acts. *Infra* at IIB. Plaintiff has alleged facts sufficient to survive a motion to dismiss in support of a *prima facie* case for retaliation as to Bennett. Dismissal at this time is inappropriate and Bennett's motion is therefore denied.

### III. CONCLUSION

Defendant Bennett's Motion to Dismiss (Doc. No. 32) is **granted** as to Count One and **denied** as to Count Two.

SO ORDERED.

---

7. Making informal complaints to management is a protected activity. *Peters*, 2003 WL 1343265, at *8 n. 5; *see also Treglia*, 313 F.3d at 721 n. 5. Plaintiff's protected activity, therefore, traces back to her initial conversation with Byler during the week of November 6, 2000.